+AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

August 10, 2015

United States of America

v.

BENJAMIN J. BOLTON

Case No. 15-M- 89

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Beginning on or about August 3, 2015, and continuing until on or about August 5, 2015, in the Western District of New York, and elsewhere, the above named defendant did knowingly and willfully transmit, in interstate commerce, from the State of Colorado to the State of New York, telephone communications to persons identified as V-1, V-2, and V-3, and the communications contained threats to cause physical injury to V-1, V-2, and V-3;

All in violation of, Title 18, United States Code, Section 875(c).

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Brent S. Isaacson, Special Agent
Federal Bureau of Investigation

*Printed name and title*

Sworn to before me and signed in my presence.
Date: August 10, 2015

_____
*Judge's signature*

City and State: Buffalo, New York

H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

I, Brent S. Isaacson, hereby depose and state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation, and I have been so employed for almost 19 years. I am assigned to the Buffalo Division of the FBI. As a part of my official duties, I am responsible for investigating alleged violations of federal criminal laws, including statutes that make it a crime to transmit in interstate commerce threats to injure the person of another.

2. I make this affidavit in support of a criminal complaint and arrest warrant charging BENJAMIN J. BOLTON, age 31, with violating Title 18, United States Code, Section 875(c), which reads as follows:

> Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

The information presented herein demonstrates that BOLTON repeatedly made telephone calls from the state of Colorado to persons in New York State during which BOLTON threatened to physically assault those persons, including threats to use a baseball bat as a weapon during the threatened assaults.

3. The information contained in this affidavit is based on information obtained during the course of an FBI investigation of BOLTON's activities and by information provided to me by officers of the New York State University Police based at the State University of New York at Buffalo State (hereinafter referred to as the "University Police"). As this affidavit is made for the limited purpose of presenting to this Court information to establish that probable cause exists to believe

BOLTON has violated a federal criminal statute, I have not provided each and every fact known to me or other law enforcement officers regarding this matter.

## BACKGROUND INFORMATION

4. BOLTON was an undergraduate student from 2009 until 2013 at the State University of New York College at Buffalo, located at 1300 Elmwood Avenue in Buffalo, New York and hereinafter referred to as "SUNY Buffalo State". He earned a bachelor's degree in criminal justice in May 2013. He was admitted into SUNY Buffalo State's graduate program in criminal justice for the Fall 2013 semester. During both his undergraduate and graduate studies, BOLTON made complaints to university officials wherein he claimed that faculty and students were disseminating information about BOLTON's previous criminal history. BOLTON, while enrolled as a student, had several interactions with SUNY Buffalo State officials that could be characterized as hostile and confrontational. In one episode, BOLTON threatened to physically assault a professor, prompting the University Police to provide security escorts for this professor while on campus.

5. On April 26, 2014, BOLTON sent an email to several professors of the criminal justice department of the university wherein he stated, in part, "Because of the behavior that has been ongoing, I am no longer wanting to live…I plan on ending my life in the near future." Later that day, BOLTON emailed a university official who had replied to BOLTON to express concern about BOLTON's earlier statement about suicide. BOLTON replied, "don't send Crisis Services to my house. I will make sure the cops use their guns this time." As a result of these emails, Erie

County Crisis Services and the Amherst Police Department took BOLTON involuntarily to the Erie County Medical Center for an evaluation. He was discharged to the care of his parents three days later.

6. The April 26, 2014, episode prompted SUNY Buffalo State to place BOLTON on an interim suspension until a hearing was held to determine whether he would be allowed to continue his academic career at the university. As a condition of consideration for having the suspension lifted, the university required that BOLTON undergo a forensic psychiatric assessment conducted by a qualified psychiatrist. BOLTON consented to such an assessment, during which the examining physician opined that BOLTON posed a high likelihood of causing injury to others at SUNY Buffalo State, either on or off campus, if he were allowed to return. The university advised BOLTON that he was banned from coming on campus until further notice.

7. On June 24, 2014, BOLTON appeared on the SUNY Buffalo State campus and caused a disturbance. He was arrested by the University Police. As a result of this incident, a prior parole for a driving while intoxicated conviction was revoked, and BOLTON was incarcerated from June 2014 to March 2015.

8. In early 2015 and with his release from custody imminent, the University Police contacted the FBI to request assistance in assessing and mitigating potential threats BOLTON posed to SUNY Buffalo State. On a national level, the FBI has devoted significant resources to better understand the behavior of persons who attack campuses and schools with the goal of detecting and preventing such attacks before

they occur. Accordingly, your Affiant and members of the FBI's behavioral analysis unit began working with the University Police on this matter.

9.     Since his release from custody in March 2015, BOLTON has placed numerous telephone calls to officials at SUNY Buffalo State that were hostile and profanity laced. During these telephone calls, BOLTON repeatedly stated that he intended to pursue legal action against the university. BOLTON also made veiled threats to university faculty, intimating that BOLTON would soon come on campus notwithstanding his ban from campus.

10.    In approximately the late spring of 2015, BOLTON was accepted into a graduate program at St. John's University in New York City. On June 16 and 17, 2015, BOLTON confronted the staff of St. John's University regarding the status of his possible employment at that university. BOLTON became loud and disruptive and was escorted off campus by security officials. On June 17, 2015, the New York Police Department took BOLTON involuntarily for a psychiatric evaluation. As a result of this abusive behavior toward university staff, BOLTON was not permitted to begin his graduate studies at St. John's University.

11.    On June 20, 2015, your Affiant spoke by telephone to BOLTON for approximately 45 minutes. During this phone call, BOLTON stated that he believed that officials at SUNY Buffalo State, including a victim he identified by name, and who will be identified hereafter in this Affidavit as V-1, have been working to monitor and harass BOLTON. BOLTON stated that he believed V-1 was monitoring BOLTON during periods of time when BOLTON was watching Internet pornography. Your Affiant encouraged BOLTON to contact the FBI with any

4

allegations of criminal activity. BOLTON was also explicitly advised that it was a crime to threaten people with physical harm. The conversational tone of BOLTON at the beginning of the conversation was angry and hostile; his conversational tone at the end of the conversation was calm. On July 8, 2015, your Affiant received a text message from BOLTON's telephone, number 718-***-**** [redacted], in which BOLTON stated that he was in Colorado. He also stated, "I've decided that I do not want to contact you anymore. Please do not contact me." Your affiant has not since contacted BOLTON.

12.   On or about June 30, 2015, the University Police applied for and was granted a warrant to search the cellular telephone records of BOLTON's cellular telephone number, 718-***-****. On or about August 9, 2015, BOLTON changed his phone number to 303-***-****. The records for both 718-***-**** and 303-***-**** showed that BOLTON has been in the Denver, Colorado area from approximately July 1, 2015 to the present. As of August 10, 2015, BOLTON's cellular telephone records indicate that he is currently in the Denver, Colorado area.

## PROBABLE CAUSE

13.   BOLTON made several calls in July and August 2015 to SUNY Buffalo State faculty and staff and to the University Police in which he made statements threatening to physically assault university employees. Many of these telephone calls were recorded, and your Affiant has listened to the recordings of such calls. Your Affiant recognized the caller's voice as BOLTON's, and a review of BOLTON's cellular telephone records indicates that the calls originated from his cellular

telephone, 718-***-****. For each of these calls, BOLTON was in the Denver, Colorado area when he called people located in New York State. These calls are summarized in subparagraphs below. Not each and every call BOLTON made to university faculty and staff is noted below. The times referenced in these paragraphs is given in Eastern Daylight Time.

a. **July 2, 2015 at 2:03 p.m.** BOLTON called the office of a high-ranking administrator at SUNY Buffalo State and asked to speak with V-1. When asked to identity himself, BOLTON stated, "fuck you," and hung up.

b. **July 22, 2015 at 2:01 p.m.** BOLTON called the same office and asked to speak with V-1. BOLTON was told to call back on August 3, 2015, and he replied, "fuck off, dumb bitch."

c. **August 3, 2015 at 12:28 p.m.** BOLTON called V-1 at his office at SUNY Buffalo State. BOLTON's tone of voice was highly aggressive and hostile. V-1 used a calm, professional tone of voice. BOLTON told V-1, "[V-1's first name], you're fucking done. You get that? When I fucking find you, I'm going to beat the shit out of you. You understand me, you little fucking pervert? I don't give a fuck who you are. I don't give a fuck where you are…when I fucking find you, when I come there, I am beating the shit out of you…You got that, old man?…I am going to beat the shit out of you when I fucking see you. I don't give a shit about no fucking police…You're fucking done…when I see you, I am beating the shit out of you. Fuck you, you little

fucking pervert...I'm gonna come there and whip your fucking ass, is what I'm gonna do." V-1 ended this call. During this call, BOLTON made several references to his belief that V-1 monitored BOLTON's Internet activity while BOLTON was watching online pornography. For this Court's information, V-1 is above 60 years of age.

d. **August 3, 2015 at 12:34 p.m.** BOLTON called V-1 back and continued his threats in a highly aggressive and hostile tone of voice. V-1 used a calm, professional tone of voice. BOLTON stated, in part, "Yeah, I'm not gonna stop, asshole. I don't give a fuck about your stupid little fucking school. You get me? You're gonna get your fucking ass whooped. I don't give a fuck who you are, you little fucking creep." BOLTON again cited his belief that V-1 monitored BOLTON's Internet activity while BOLTON was watching online pornography.

e. **August 3, 2015 at 4:00 p.m.** BOLTON called V-1 at his office at SUNY Buffalo State. BOLTON's conversational tone was highly aggressive and hostile. BOLTON stated, in part, "Fuck you, [V-1]. Fuck you. You're fucking done....You really don't think I'm going to beat your fucking ass, dude?...You're fucking done. I'm gonna beat the shit out of you, old man, and I'm not gonna care. Fuck you. You little bitch."

f. **August 3, 2015 at between 3:46 p.m. and 5:05 p.m.,** BOLTON called the University Police three times and stated, in part, that he was

going to "whoop [a named Investigator's] ass as well as [V-1's...V-1's] getting his ass whooped....You're gonna have somebody get their ass whooped on your fucking campus."

g. **August 4, 2015 at 1:55 a.m.** BOLTON called the University Police dispatcher and stated, "Yeah, make sure you tell [V-1] to watch his fucking back, cause it's coming. I'm whooping the shit out of that old man's ass...I'm whooping the shit out of that old man. There ain't nothing you pussy ass [unintelligible] gonna do about it. Fuck you."

h. **August 4, 2015 at 1:17 p.m.,** BOLTON called the University Police dispatcher and stated, "Yeah, I'm telling you, you'd better go fucking protect [V-1], because I'm going to beat the shit out of him. It's gonna happen. I don't give a fuck about your little fucking campus. You hear that? I don't give a fuck about your (persona non grata) letter. I don't care who you talk to. I will come on there and I will slap the shit out of that man. It's going to happen....I've already told him numerous times."

i. **August 4, 2015 at 1:24 p.m.,** BOLTON called V-1's office and threatened a female employee whom he addressed by first name. Hereafter in this Affidavit this victim will be referred to as V-2. BOLTON told V-2: "...I told you, you don't think I'm gonna smack the shit out of you when I see you? I don't give a fuck who you are, smart ass...I'll bring mine you fucking cunt...I don't give a fuck who you are...play that bullshit with me, I'll slap the shit out of you. I

don't give a fuck who you are. Fuck your little pussy cops...Yeah, sit there in silence, you dumb cunt, I don't give a fuck. You're a fucking waste of space."

j. **August 5, 2015 at 12:52 p.m.**, BOLTON called V-1's office at SUNY Buffalo State, and a female staff employee answered the call. After being advised that V-1 was in a meeting, BOLTON stated, "Make sure you tell him [*i.e.*,V-1] that I am going to come on campus, and I'm going to whoop the shit out of him with a baseball bat. You got that?...I'll come on campus and beat the shit out of him, and it's going to happen. There's not a fucking thing that you or any other police officer is going to do to prevent that. So you make sure he [i.e.,V-1] knows that, that he's going to have to deal with me swinging a fucking baseball bat at his face, and I don't give a fuck about no Goddamned law or cops. You got that? Did you write it all down and put it on his desk?" During this call, BOLTON confirmed that his call back number was 718-***-****.

14. On August 4, 2015, BOLTON made three telephone calls to another faculty member at SUNY Buffalo State. Hereafter in this Affidavit this victim will be referred to as V-3. These calls were not recorded. The calls occurred at 1:34 pm, 1:41 pm, and 1:42 pm. According to V-3, BOLTON threatened to assault V-3 with a baseball bat. BOLTON also threatened to find V-3's house and hog-tie V-3. This was the first time V-3 has been threatened by BOLTON. Later that evening, at approximately 9:11 p.m., V-3 received another telephone call from BOLTON at V-

9

3's residence. BOLTON said in what V-3 described as a "snarky" voice, "Hello, [V-3's first name]." BOLTON then hung up. In response to this call, V-3 immediately contacted his telephone service provider and had his home telephone number changed. V-3 reported this incident to the Orchard Park Police Department and the University Police Department.

15.  On August 7, 2015 at 2:58 p.m., BOLTON telephoned the FBI office in Jamestown, New York and asked to speak with your Affiant. A female FBI employee answered this call and advised BOLTON that your Affiant was not in the office. BOLTON then stated, "He had better not contact me again, or I will sue him. I will sue him and slap him in the mouth." This conversation was not recorded.

16.  BOLTON's threats have caused significant disruption to the SUNY Buffalo State campus, including a heightened state of security awareness, increased police presence, extensive law enforcement efforts to locate BOLTON, the disruption of police emergency telephone communications, and the closing of campus offices.

## CONCLUSION

17.  As detailed above, BENJAMIN BOLTON has made several telephone calls from his location in and around Denver, Colorado to officials located in New York State at SUNY Buffalo State, the University Police Department, and the FBI. Several of these phone calls included explicit threats to locate and physically assault the persons of three employees of SUNY Buffalo State. Accordingly, it is respectfully requested that this Court find probable cause exists to believe that BENJAMIN J. BOLTON has violated Title 18, United States Code, Section 875(c)

which prohibits the transmission in interstate commerce of threats to injure the person of another.

Brent S. Isaacson
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed

to before me this ___ day of
August
~~July~~ 2015.

H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE

11