UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

UNITED STATES OF AMERICA,

     v.                                   DECISION AND ORDER
                                         15-CR-158

BENJAMIN BOLTON,

           Defendant.

─────────────────────────────────


After Benjamin Bolton pleaded guilty on September 6, 2016, to making threats via interstate communications, *see* Docket Item 47, this Court sentenced him to 30 months' imprisonment and three years' supervised release, *see* Docket Item 53. The charge to which Bolton pleaded guilty involved a series of violent threats to a faculty member and others at a college he attended. These threats—which Bolton admitted and which were particularly vile and graphic—are detailed in the plea agreement, Docket Item 47; the plea colloquy, Docket Item 71; and this Court's decision and order denying habeas relief, Docket Item 153. The Court will not repeat them here except to say that they were laced with profanity; that they threatened beatings, including beatings with a baseball bat; and that at least some of them were directed to an individual whom Bolton called an "old man." Needless to say, those threats instilled fear in those to whom they were directed, something Bolton himself acknowledged at his sentencing hearing, *see* Docket Item 69 at 24 ("I scared those people, and I'm not proud of it");  *id.* at 26 ("the victims are exactly that … [and] they didn't deserve what I did"), and in his sentencing submission, Docket Item 50-1 at 4 ("I feel bad about causing harm to … the victims").

Bolton completed his sentence of incarceration and commenced his three-year term of supervision in October 2017.  *See* Docket Item 80 at 3.  On August 24, 2018, the government moved to modify his conditions of release.  Docket Item 80.  More specifically, the government asked the Court to order six months of GPS monitoring based on Bolton's escalating complaints to the FBI that culminated in two specific August 2018 incidents.  *Id.*

First, Bolton threatened to visit the home of an FBI agent with whom Bolton was angry and to "have a nice talk" with him.  *See id.* at 10-11.  Bolton claims that the agent had offered to meet with Bolton but that Bolton refused to meet the agent because, in Bolton's words, the agent "was full of sh--," an opinion "Bolton still strongly holds."  *See* Docket Item 86 (Bolton's response to motion to modify conditions of supervised release) at 6-8.  After trying to file complaints about the agent—attempts that Bolton claims were stymied by the FBI, *id.* at 6-8—Bolton left a message that he planned to go to the agent's "home and have a nice conversation with him," *id.* at 8-9.  Bolton allegedly sounded upset when he told an FBI employee that he knew "where [the FBI agent] live[d]" and to tell the agent that Bolton was "going to his house, and we'll have a conversation."  Docket Item 80 at 10-11.

Second, just days after this conversation with the FBI, Bolton posted the following on his Facebook page:

> Dear Jamestown area friends,
> You have an FBI Agent – [The Case Agent] – who gives speeches and lectures at schools and is a criminal. This man generates cases because of the lack of criminal activity in WNY. We need to put a stop to [The Case Agent]'s phoniness and corruption.

*Id.* at 11.  Based on the phone message and the Facebook post, among other things, the government asked that Bolton's conditions of supervised release be modified.  *See id.* at 12.

Before modifying any conditions of release as the government requested, the Court gave Bolton an opportunity to contest the government's allegations and motion. On September 21, 2018, the Court scheduled an evidentiary hearing, which was adjourned and converted into a pre-hearing conference at Bolton's request.  Docket Item 144 at 2-3.  Bolton appeared with his parents, whom the Court permitted to join him at counsel table.[1]  *Id.* at 2.  At that conference, the Court gave notice that in addition to the GPS relief sought by the government, the Court was considering an additional modification of supervised release:  another evaluation of Bolton by a mental health professional.  *Id.* at 8-9.  One of the conditions of supervised release required Bolton to "submit to a mental health evaluation."  *See* Docket Item 53 at 4 (special conditions of supervision in judgment).  Bolton did that and apparently had been evaluated by a mental health worker who was not a psychiatrist or psychologist.  Docket Item 144 at 7-9.  At the conference, the Court gave Bolton notice that it might require a second evaluation of him by a mental health professional—this time by one who was a psychiatrist or a psychologist, that is, with either an M.D. or Ph.D. degree.  *Id.*

The Court scheduled the hearing for October 11, 2018, *id.* at 18, 25, and the hearing began on October 11th as scheduled.  Docket Item 97.  The government presented two witnesses who testified and were cross-examined by Bolton.  *Id.*; Docket

---

[1] Bolton refused the Court's offer to appoint counsel for him and chose to represent himself.  *See* Docket Item 84.

Item 111.  But at Bolton's request, and because Bolton's parents had to leave early on October 11, the hearing was adjourned and was scheduled to continue on December 14, 2018.  *Id.* at 98-100.

Since that time, this matter has taken on a life of its own.  Bolton moved several times to adjourn the continued hearing, and the hearing was adjourned at his requests—first to January 28, 2019, Docket Items 99, 100; then to April 1, 2019, Docket Items 102, 103; and then to April 29, 2019, Docket Items 104, 109.  Two weeks before that hearing date, the continuation of the hearing was converted into another status conference due to a medical issue that Bolton said made it impossible for him to attend court on April 29.  *See* Docket Items 137, 139, 141, 142, 143.  At first, Bolton had asked that the April 29 date be adjourned due to his *pro se* status and inability to be ready to continue the hearing as scheduled.  *See* Docket Item 137.  Then, after the Court extended his time to file hearing submissions but refused to adjourn the April 29 hearing date, Docket Item 139, Bolton contacted the Court—repeatedly by phone and then by a letter—advising that "emergency oral surgery" on April 16 made it impossible for him to continue the hearing about two weeks later—on April 29.  Docket Item 141.  The Court granted his request.  *Id.*; *see also* Docket Item 143.

In the meantime, Bolton has filed no less than thirteen motions, requesting relief ranging from discovery, to early termination of supervised release, to disqualification of opposing counsel and holding her in contempt of court, to recusal of the Court and a change of venue.  *See* Docket items 114, 115, 116, 117, 118, 119, 120, 121, 122, 125, 126, 127, 135.  What had been a relatively simple and straightforward modification hearing has turned into something far more complicated.

To get this matter back on track and to conserve the Court's and the parties' time and resources, the Court resolves the pending motions as follows and sets the parameters of the continued hearing.[2]

## MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE (DOCKET ITEM 114; *see also* DOCKET ITEM 151)

Bolton's motion to terminate his supervised release is denied. He has not shown any "changed circumstances—for instance, exceptionally good behavior by the defendant"—that provides a reason for early termination. *See United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997). In fact, Bolton's change of heart from accepting responsibility for his admitted criminal conduct, *see* Docket Items 69 at 24-26 and 50-1 at 4, to blaming others for his criminal threats, *see* Docket Item 68 at 2 (Bolton's "communications to the alleged victims were a reaction to crude and unprofessional actions by multiple employees at Buffalo State College"), counsels otherwise. And Bolton's bold claim that "any mandated efforts by the Court" to have him evaluated or treated by mental health professionals "are useless" because of Bolton's "strong commitment to not participate in any forms of mental health therapy," Docket Item 114 at 16, leads to the same conclusion.

---

[2] By telephone calls to this Court yesterday and today, Bolton requested leave to reply to the government's responses to some of his pending motions. Bolton's time to reply to the government's responses to nine of his motions—Docket Items 114, 115, 116, 117, 118, 119, 120, 121, and 122—expired on April 25, 2019, a deadline the Court already extended at Bolton's request. *See* Docket Item 139. His request for a further extension of time is denied.

The government has not responded to Bolton's other four pending motions—Docket Items 125, 126, 127, and 135—and so as to those motions there is nothing to reply to.

Bolton does raise one legitimate concern in his motion for early termination of supervised release:  his desire to pursue graduate studies not available in Western New York.  He therefore is given leave to move for transfer of jurisdiction over a person on supervised release under 18 U.S.C. § 3605.  His motion for early termination is denied, however, without prejudice to renew upon the demonstration of genuinely changed circumstances.

## MOTION TO COMPEL PRODUCTION OF DOCUMENTS
## (DOCKET ITEM 115)

Bolton asks for all information in his probation office file, his FBI file, and his Buffalo State College Police Department file, as well as any communications between the United States Attorney's Office and the FBI related to him and the probation office.  Bolton has not demonstrated any "mitigating evidence material to his case" that such documents are likely to uncover.  *See United States v. Johnson*, 356 Fed. App'x 785, 789 (6th Cir. 2009).  Nor has he provided any legal support for what he seeks.  *See* Docket Item 115.  And much of what he requests might well include sensitive materials from law enforcement agencies that should not be made public.  His motion for the above materials is therefore denied.

Bolton also seeks educational degrees and certificates for employees of the FBI and the United States Probation Office.  *See id.* at 3 (item 4).  That request seeks material that is irrelevant and is also denied.

## MOTION TO UNSEAL DOCKET ITEM 79
## (DOCKET ITEM 116; *see also* DOCKET ITEM 150)

Bolton moves to unseal Docket Item 79, which was Exhibit 1[3] that he himself submitted in connection with Docket Item 78, his "Response to Government's Response" to this Court's order to show cause of March 16, 2018. As such, Bolton already has this sealed exhibit and his motion is denied as moot. If Bolton no longer has a copy of this exhibit, the Court will provide him with a hard copy upon request.

## MOTION FOR CHANGE OF VENUE
## (DOCKET ITEM 117)

Bolton asks for a change of venue based on "many biases of the presiding judge and Court in general." *See* Docket Item 117 at 1. In fact, he "believes that the presiding judge has been biased and unfair for the entire processes involved" in the current matter. *Id.* But he largely cites alleged biases of the prosecutor and the probation office to support his claims. *Id.* at 1-2.

With respect to the bias of the presiding judge, Bolton cites only a May 2017 (sic – should be 2018) speech given by the judge that Bolton claims violated the judicial ethics proscription against political discourse. *Id.* at 3. Bolton says that the speech was given at a "local law conference with many individuals who" Bolton "has routinely criticized." *Id.* How that demonstrates the Court's bias against Bolton is anyone's guess, as Bolton does not explain his reasoning. In any event, this Court (1) harbors no

---

[3] The exhibit consists of a photograph of a public defender and a student who was in Bolton's criminal justice program at Buffalo State College, along with a short memo from Bolton describing the photo.

bias, (2) does not believe that the speech violated any ethical canons, and (3) sees absolutely no connection between (1) and (2).

Bolton also cites the fact that all his civil matters have been assigned to a single judge as evidence of the Court's bias. But those assignments have nothing to do with this matter, which is pending before a different judge. And again, Bolton has not even suggested how such assignments affect this case or demonstrate any bias.

Finally, Bolton claims that because he has been critical of legal practitioners in Western New York, and because of the Western New York connection with the State University of New York, "it is certainly in the best interest of justice that these proceedings be transferred." *Id.* This Court disagrees. Bolton has provided no good reason to change venue, and his motion to do so is denied.

## MOTION TO DISQUALIFY THE PROSECUTOR
### (DOCKET ITEM 118)

Bolton refers to the prosecutor's conduct as "egregious" and "malicious." Docket Item 118 at 1. He refers to her "childish outbursts in the courtroom," as well as her "unprofessionalism, and overzealous conduct." *Id.* at 2-3. But the Court has witnessed no such conduct, and Bolton offers nothing more than his self-serving characterizations to support his claim. His motion to disqualify the prosecutor is denied.

## MOTION TO PRODUCE SURVEILLANCE VIDEO FROM THE COURT
### (DOCKET ITEM 119)

Bolton asks for a November 2018 surveillance video that he claims will show "a courthouse security official" assaulting him "at the FRONT entrance of the courthouse."

Docket Item 119.  The government has advised that any surveillance video from November 2018 no longer exists.  Docket Item 131 at 2.  Bolton's motion for the video is therefore denied as moot.

## MOTION TO CALL AND RECALL WITNESSES
## (DOCKET ITEM 120; *see also* DOCKET ITEM 149)

Bolton asks to recall the two witnesses he already cross-examined and to call four other witnesses to testify about "a research project that may be based on the frivolous claims by the Government and the United States Probation Department, and communicated with unregistered informants that were told to communicate with the defendant (Bolton) in an unusual fashion."  Docket Item 120 at 1-2.  Bolton does not explain the research project or say how or what he knows about it.  Nor does he explain how any of that is relevant to the issue before the Court—that is, whether to modify his conditions of supervised released.  His request is speculative by its very nature.  It is denied.

## MOTION TO EXCLUDE GOVERNMENT EXHIBITS
## (DOCKET ITEM 121; *see also* DOCKET ITEM 149)

Bolton moves to exclude posts on his social media page (Exhibits 2 and 5) as well as a recording and transcript of a call he made to the FBI (Exhibits 4 and 4A).  *See* Docket Item 121.

Bolton contends that Exhibit 2, "a Facebook posting on the defendant's (Bolton) profile," is irrelevant and taken out of context.  His objection to the admissibility of the exhibit was overruled at the hearing and will not be revisited.  *See* Docket Item 111 at

10-11.  He still may argue that it was taken out of context and that it does not support modification of the conditions of supervised release.

Likewise, Bolton contends that Exhibit 5, another social media post, is protected speech.  Docket Item 121 at 5.  That may well be true.  But that is not a reason to exclude it, and Bolton offers no other reason to do so.  Of course, Bolton can argue that Exhibit 5 was an entirely appropriate statement and irrelevant to any claim against him.  But his motion to exclude that exhibit is denied.

Bolton also moves to exclude Exhibits 4 and 4a, recordings of a phone call he made to the FBI.  Docket Item 121 at 2-5.  He claims that the recordings were acquired illegally without his consent and that they are being used erroneously by the government.  *Id.*  But what a defendant says voluntarily to a law enforcement agent is not something in which the defendant has a privacy interest.  *See United States v. White*, 401 U.S. 745, 749 (1971); *United States v. Davis*, 326 F.3d 361, 365 (2d Cir. 2003); *see also United States v. Lopez*, 373 U.S. 427, 438-40 (1963) (wire recording conversation between federal agent and defendant does not violate Fourth Amendment).

Bolton offers no good reason to suppress his phone call.  His motion to do so is denied.  Again, however, he is free to argue anything he wants about the context of that call and what he meant when he said what he did.

## MOTION TO DISCLOSE REPORTS OF EXAMINATIONS, TESTS AND OTHER MATERIALS
## (DOCKET ITEM 122)

Bolton has asked the government to disclose any results or reports of any physical or mental examination or of any scientific test or experiments if the government possesses or controls the item; the attorney for the government knows or should know that the item exists; and the item is material to the case. Bolton's motion is granted. If the government withholds any such results or reports because the government deems them not material, it shall submit them to the Court for *in camera* review.

## MOTION FOR A CEASE AND DESIST ORDER
## (DOCKET ITEM 125)

This motion has been withdrawn by letter of Benjamin Bolton to the Court dated April 8, 2019. Docket Item 133.

## MOTION TO SEQUESTER WITNESSES
## (DOCKET ITEM 126)

Bolton has moved to sequester witnesses. That motion is granted.[4]

---

[4] It is the Court's practice to sequester witnesses at all trials and other proceedings. For that reason, the Court believes that all witnesses have been sequestered thus far. In any event, the Court grants the defendant's motion.

## MOTION TO HOLD PROSECUTOR IN CONTEMPT
## (DOCKET ITEM 127)

Bolton's motion to hold the prosecutor in contempt is denied for the same reasons that his motion to disqualify the prosecutor was denied. *See* Discussion of Docket Item 118, *supra* at 8.

## MOTION TO REMOVE GPS MONITORING
## (DOCKET ITEM 135)

Bolton moves to be relieved of his GPS monitoring condition. GPS monitoring is the relief requested by the prosecutor in this hearing, and the Court imposed that condition temporarily pending completion of the hearing. The hearing would be over by now were it not for Bolton's repeated requests for adjournments. His motion to have GPS removed is denied pending completion of the hearing.

## CONTINUATION OF THE HEARING

As noted above, this matter now has been pending since August 2018—almost eight months. The first—and only—hearing date was more than six months ago. Too much time has passed and too many resources have already been devoted to this matter.

Based on the transcript of the first hearing day, which took about 140 minutes, the Court estimates that the government has spent about 45 minutes presenting its case and that Bolton has spent about an hour and twenty minutes cross examining. The Court will schedule one more day to complete the hearing. The government has two hours to complete its case and cross examine Bolton's witnesses. Bolton has three

hours to cross examine the government witnesses and put on his case. The

government has 30 minutes rebuttal time, if necessary.

    The hearing is set for July 1, 2019, at 9:30 a.m. There will be no adjournments.


    SO ORDERED.

Dated:      May 1, 2019
          Buffalo, New York


                        *s/Lawrence J. Vilardo*
                        LAWRENCE J. VILARDO
                        UNITED STATES DISTRICT JUDGE